UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SEAN MURPHY, et al., | ) | |
| | ) | Case No. 3:24-cv-78 |
| *Plaintiffs*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Jill E. McCook |
| BRIXWORTH HOMEOWNER'S | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION

Before the Court are the following motions: (1) Defendant Brixworth Homeowner's Association, Inc.'s motion for judgment on the pleadings (Doc. 19); (2) Plaintiffs' motion to remand (Doc. 31); and (3) Plaintiffs' motion to recuse the undersigned (Doc. 34). For the reasons that follow, the Court will **DENY** Plaintiffs' motions to remand (Doc. 31) and for recusal (Doc. 34). It will **GRANT** the motion for judgment on the pleadings (Doc. 19) and **DISMISS** the case.

I.  BACKGROUND

Plaintiff Sean Murphy is a resident of the Town of Farragut ("the Town") in Knox County, Tennessee. (Doc. 1-2, at 1.) He lives in the Brixworth neighborhood, which is managed by Defendant Brixworth Homeowner's Association, Inc. ("the BHOA"). (*Id.* at 2.) Plaintiff Denise Pagels, Murphy's wife, co-owns the Brixworth home and resides there with Murphy and their minor children.

Murphy is active in local politics. (*Id.*) To share his political views, he co-founded a podcast and multiple newspapers, including the Farragut Free Press. (*Id.* at 3.) The Farragut

Free Press has published articles featuring parodies of local elected officials and communicating Murphy's opinion that many of these officials are corrupt and engaging in illegal activities. (*Id.*) He has also erected signs, which he refers to as "yard art," on his property as an outlet for political expression. (*Id.* at 6.) The signs consist of three "memes parodying and criticizing key Farragut elected officials," as pictured below:



(*Id.* at 6.)

On May 2, 2023, Murphy received a municipal citation from the Town for violating a sign ordinance, Farragut, Tennessee, Code § 109-12(b)(5).[1] (*Id.* at 7.) A few days later, BHOA President Kirk Swor called Murphy to discuss complaints neighbors relayed about the yard art. (*Id.*)

On May 19, 2023, Swor followed up with Murphy about his yard art over email. (*Id.*) In that email, Swor expressed a desire to pursue "an accelerated outcome in regards to the signs you have had in your front yard for several weeks now" and to "avoid unnecessary further steps."

---

[1] The ordinance requires temporary parcel signs not to exceed six square feet. Farragut, Tenn., Code § 109-12(b)(5).

(*Id.* at 28.) Swor explained that he "strongly feel[s] your residence is in violation of the Brixworth [Covenants, Conditions, and Restrictions ("CCRs")], of which you are a member." (*Id.*) He attached and highlighted the relevant provision of the CCRs, which states as follows:

## ARTICLE XVIII

## SIGNS

> No sign of any kind shall be displayed to the public view on any lot except one professional sign of not more than one square foot, one sign of not more than five square feet advertising the property for sale or rent, or signs of no larger size used by the builder to advertise the property during the construction or sales period.

(*Id.* at 39.) Swor concluded the email by asking Murphy to "please consider this an official request to remove the signs from your property" in compliance with Article XVIII of the CCRs. (*Id.* at 28.) He gave Murphy until May 25, 2023, to remove the signs. (*Id.*)

Two days later, Swor and Murphy revisited the topic over email. (*Id.* at 8.) Murphy asked Swor for complete copies of the CCRs, and Swor directed Murphy to access the documents "for free on different websites." (*Id.* at 33.) He offered to "share a copy with you" if Murphy preferred. (*Id.*) Murphy did not respond. (*Id.*)

On May 25, 2023, Swor and Murphy again exchanged emails. This time, Murphy asked Swor for the following documents: (1) "[t]he full copy of the [CCRs]"; (2) the CCR provision Swor believed Murphy had violated; (3) "any supporting documentation" of the violation. (*Id.* at 13.) Swor sent the following response:

> My email sent to you on May 19, 2023[,] cited the [CCR] violation, and also had attached the TCA law you referenced. You are well aware of the HOA's stance at this point, and the deadline as previously emailed is EOD today. I've been as lenient as I can, given the situation, for over a month now. I'm honestly trying to avoid further and unnecessary escalation over this simple matter. Let's just knock this out and move on to bigger and better things.

(*Id.* at 14, 42.)

On June 8, 2023, Murphy received a letter from an attorney representing the BHOA. (*Id.* at 9.) The letter gave Murphy an ultimatum: remove the yard art by June 9, 2023, or temporarily lose access to community facilities, including the clubhouse, pool, and basketball court. (*Id.*) The letter again cited Article XVIII of the CCRs, the provision barring the display of large or unprofessional signs. (*Id.* at 39.) It also noted the BHOA's power to enforce the CCRs "by suspending an HOA members' right to the enjoyment of the common areas 'for any period not to exceed thirty (30) days for any infraction of its published rules.'" (*Id.* at 40.)

Murphy did not take the signs down. BHOA Treasurer Ford texted Murphy the next day:

> I was going to send you and [your wife] a note later tonight advising that you will need to make other plans for your meetings on June 29th and [] July 6th as you will not have access to the [neighborhood] clubhouse at that time. Hope this can be resolved soon and we can resume enjoyment of our awesome neighborhood!

(*Id.* at 42.) Murphy still has not removed the signs.

Plaintiffs[2] filed this action in the Chancery Court for Knox County, Tennessee, on September 28, 2023. (*Id.* at 1.) Defendant BHOA removed the action to this Court on February 20, 2024. (Doc. 1, at 3.) In the complaint, Plaintiffs allege that the BHOA entered into a contract with them via the CCRs, then breached that contract by regulating Murphy's yard art and revoking access to community facilities. (Doc. 1-2, at 14–16.) Plaintiffs also appear to suggest that the breach implicated their First Amendment right to freedom of speech, the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et. seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq*. (*Id.* at 6, 12–13.) On May 1, 2024, the BHOA filed a motion for judgment on the pleadings (Doc. 19). Instead of responding to the motion, Plaintiffs

---

[2] Plaintiffs consist of Sean Murphy, his wife Denise Pagels, and their minor children.

moved to remand the case to state court (Doc. 31) and to recuse the undersigned from presiding over the matter (Doc. 34). The motions (Docs. 19, 31, 34) are ripe for review.

The Court notes that Plaintiffs have already unsuccessfully litigated the BHOA's regulation of Murphy's yard art. On November 8, 2023, they brought claims in this Court against the Town of Farragut, a bevy of local officials, and BHOA President Kirk Swor for violations of the First Amendment, Fourteenth Amendment, and various state laws. (Doc. 1 in Case No. 3:23-cv-402.) All Defendants in that action moved to dismiss all claims for failure to state a claim, and the Court granted the motions in full on April 15, 2024. (Doc. 81 in Case No. 3:23-cv-402.) In that opinion, the Court deferred to the state court decision upholding the ordinance banning excessively large yard art and found that the Town "lawfully regulated [Murphy's] speech through [the] ordinance." (*Id.* at 14, n.5.)

## II.  MOTION TO REMAND (Doc. 31)

Plaintiffs move to remand this case to state court (Doc. 31). It is not clear from the motion what basis they have for requesting this action; Plaintiffs generally complain that the BHOA misunderstood the complaint and ask the Court to remand the matter to the Chancery Court of Knox County, Tennessee, where it was initially brought. (*Id.* at 6.)

Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and Plaintiffs alleged in their complaint that the BHOA violated two federal statutes—the ADA and FHA—and their First Amendment right to freedom of speech. (Doc. 1-2, at 6, 12.) They seem to acknowledge that they intended to assert these claims in their reply. (Doc. 37, at 1–2.) Because Plaintiffs assert multiple federal claims, the Court has original jurisdiction and will not remand the case. Accordingly, Plaintiffs' remand motion (Doc. 31) is **DENIED.**

### III. MOTION TO RECUSE (Doc. 34)

Plaintiffs also move to recuse the undersigned from this matter (Doc. 34). As the basis for the motion, Plaintiffs cite to the undersigned's prior employment with the City of Chattanooga and Miller & Martin PLLC. (*Id.* at 3.) Further, because the undersigned worked with former City of Chattanooga Mayor Andy Berke, who implemented low-income housing, Plaintiffs argue recusal is necessary. (*Id.*) They also take issue with the fact that the undersigned presided over the related case, Case No. 3:23-cv-402, which has since been dismissed. (*Id.*)

When a judge's personal knowledge or experience encroaches upon his ability to fairly decide a case, he must recuse. 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."). The standard for doing so is "difficult . . . to reach." *United States v. Liggins*, No. 22-1236, 2023 WL 4946323, at *4 (6th Cir. Aug. 3, 2023) (describing the recusal standard as a high bar). To face recusal, a judge's conduct must be so extreme as to "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (internal quotation marks omitted) (cleaned up). A judge must also recuse "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. To trigger recusal under § 144, a party must submit "a timely, sufficient affidavit and her [must certify] that the affidavit is made in good faith." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007). Such an affidavit is timely if it is submitted "at the earliest moment after the movant acquires knowledge of the facts demonstrating the basis for such disqualification." *Id.* (citation and internal quotation marks omitted). Though a court is required to accept as true

6
Case 3:24-cv-00078-TRM-JEM   Document 40   Filed 08/08/24   Page 6 of 15   PageID #: 365

factual allegations contained in the affidavit, it "may only credit facts that are sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *Id.* (citing *Hoffman v. Caterpillar, Inc.,* 368 F.3d 709, 718 (7th Cir. 2004)).

Recusal is not warranted here. Plaintiffs have not explained how the undersigned was involved in former Mayor Berke's low-income housing projects or how such involvement would affect the ability to fairly decide this case. This case stems from events taking place in the Town of Farragut; prior to this motion, Plaintiffs have made no mention of the City of Chattanooga or its former mayor's actions. The Court's handling of a related matter is also not a basis to recuse from the present case. *See Whiting v. City of Athens, Tenn.*, No. 23-6082, 2024 WL 3537651, at *3 (6th Cir. July 25, 2024) ("Indeed, the Supreme Court has explained that the 'opinions held by judges as a result of what they learned in earlier proceedings' do not render them personally biased under § 455.") (citation omitted). Moreover, the declarations filed in support of the recusal motion—from Denise Pagels, Plaintiff Sean Murphy, Counsel Russ Egli, and non-party Wendy Rose—are not certified by counsel, were not timely submitted, and consist of conjecture rather than particular facts. *See Scott*, 234 F. App'x at 352. Plaintiffs have provided no reasonable legal basis for recusal, so the Court will **DENY** the motion (Doc. 31).

## IV. MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 19)

### A. STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(c). A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to 12(b)(6) motions for failure to state a claim. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Thus, on a Rule 12(c) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. For purposes of this determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007)). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549.

B.     **ANALYSIS**

    i.     ***Plaintiffs' Failure to Respond***

As a preliminary matter, Plaintiffs have not filed a response to Brixworth's motion for judgment on the pleadings. One day before the response was due, Plaintiffs moved for an extension of time due to their counsel's involvement in other matters, including an appeal in state court. (Doc. 24, at 1.) The Court granted a twenty-one-day extension, making Plaintiffs' response due on June 19, 2024. (Doc. 36, at 1.) Instead of filing a response, Plaintiffs moved to remand the action to state court and to recuse the undersigned (Docs. 31, 34). To date, Plaintiffs have not filed a response to the motion for judgment on the pleadings.

Pursuant to Local Rule 7.2, "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2; *see also Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."). Nevertheless, the Sixth Circuit has held that "where the adverse party has not responded to a motion to dismiss, the district court must consider the evidence presented and make a determination accordingly." *Green v. City of Southfield*, 759 F. App'x 410, 417 (6th Cir. 2018) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). Therefore, the Court will consider the arguments in Defendants' motion for judgment on the pleadings and whether the facts Plaintiffs alleged in the complaint dispute any of those arguments.

### ii. Statutory Bar to Challenging the BHOA's Authority

The BHOA first argues that Plaintiffs' complaint should be dismissed because they have not pleaded the appropriate course of action to challenge the BHOA's authority to exercise powers contained in the CCRs. (Doc. 21, at 12.)

Tennessee HOAs are nonprofit corporations governed by the Tennessee Non-Profit Corporation Act, Tennessee Code Annotated § 48-51-101 to § 48-68-211. According to Tennessee Code Annotated § 48-53-104:

> (a) Except as provided in subsection (b), the validity of corporate action **may not be challenged on the ground that the corporation lacks or lacked the power to act.**
> (b) A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act . . . . The proceedings may be brought by the attorney general and reporter, a director, **or by a member or members in a derivative proceeding.**

(emphases added). Tennessee state courts have interpreted this provision to "provide[] only one means of recourse" for a plaintiff arguing an HOA lacks authority to enforce its rule: "a derivative proceeding brought in the right of the corporation." *Germantown Manor Homeowners Ass'n, Inc. v. GGAT Dev. Corp.*, No. W2016-01461-COA-R3-CV, 2017 WL 3668926, at *5 (Tenn. Ct. App. Aug. 24, 2017).

Under Tennessee law, the difference between a direct and a derivative claim hinges on "the nature of the wrong and to whom the relief should go." *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 876 (Tenn. 2016) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)). For a derivative claim, the wrong is suffered by the corporation (here, the BHOA), and the harm to the shareholder (here, Murphy, as a BHOA member) is "merely incidental to the wrong suffered by the corporation and affects all stockholders alike." *Id.* at 867 (internal quotation marks omitted). In contrast, in a direct action, the shareholder is the one who

suffered the claimed injury, and any recovery would go to that injured shareholder. *Id.* at 868–69.

Here, Plaintiffs can only challenge the BHOA's power to enforce the CCRs by regulating Murphy's yard art if they, as BHOA members, file a derivative action. They have not done so. In this case, Plaintiffs assert a direct action because the complaint alleges that Plaintiffs—not the BHOA—have directly suffered injuries. Any recovery Plaintiffs would be entitled to is thus for their benefit rather than that of the BHOA. Because they bring a direct claim rather than a derivative action under Tennessee law, Plaintiffs have failed to state a claim that Tennessee law recognizes. Accordingly, to the extent Plaintiffs purport to challenge the BHOA's authority to enforce its CCRs against them, those challenges must fail.

### iii. Failure to State a Claim

Even ignoring this issue, Plaintiffs' complaint also fails to state a claim upon which relief can be granted. As best as the Court can tell, Plaintiffs attempt to assert claims against the BHOA for violation of their First Amendment freedom of speech, the FHA, the ADA, and for breach of contract.[3] (Doc. 1-2, at 6, 15.)

#### a. First Amendment Freedom of Speech

Plaintiffs' First Amendment claim fails. The Court already found in a related case, Case No. 3:23-cv-402, that Murphy's yard signs "cannot serve as the basis of a First-Amendment

---

[3] Put generously, the Complaint is unfocused. It details interactions between Murphy and various Farragut officials that seem to have no connection to the present action. (*See, e.g.*, Doc. 1-2, at 4 (describing Farragut Mayor Ron Williams's accusation that Murphy attempted to run him and his wife over in the Town Hall parking lot).) It is not clear what relief Plaintiffs seek, but the complaint states they want damages "for breach of contract" and discusses the implication of their First Amendment rights at various points throughout the complaint. The complaint also briefly references the ADA and FHA. Therefore, for the sake of comprehensibility, the Court will address these apparent claims.

retaliation claim," and the Court incorporates that analysis by reference here. (Doc. 81, at 14 in Case No. 3:23-cv-402.) To briefly recap, the Court found that "the Town lawfully regulated [Murphy's] speech through an ordinance—Farragut, Tenn., Code § 109-12(b)(5)." (*Id.*) The ordinance is lawful, the Court went on, because the Knox County Circuit Court already ruled as much. (*Id.* at 14 n.5 ("Because Plaintiffs already raised, fully litigated, and received a final judgment resolving this issue—whether the Town's yard-sign ordinance violated the First Amendment—on the merits in municipal court, they are collaterally estopped from raising it again.") (citations omitted).) Then and now, the Court lacks the authority to second guess a state-court ruling. *See RLR Invs., LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 387 (6th Cir. 2021) (reminding that federal courts lack jurisdiction to review state-court decisions); *see also Roche v. Citimortgage, Inc.*, No. 14-cv-11424, 2016 WL 5661580, at *2 (E.D. Mich. Sept. 30, 2016) (noting that the *Rooker-Feldman* doctrine, which bars a federal court from overriding a state-court decision, applies to municipal-court decisions) (citation omitted). Therefore, Plaintiffs fail to state a claim that the BHOA's regulation of Murphy's yard art violated their First Amendment rights. The Court will dismiss the present claim.

        **b.**     **Fair Housing Act ("FHA") & American with Disabilities Act ("ADA")**

To the extent Plaintiffs intend to bring a claim against the BHOA under the FHA or ADA, they have not stated a claim for relief.

        *1.*     *ADA*

Start with the ADA. Plaintiffs seems to think they are entitled to access the private neighborhood pool because "swimming in the pool [is needed] to cool [Murphy] down when his disability flares up." (Doc. 1-2, at 12.) They are not.

The ADA provides, in pertinent part, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "The ADA only regulates non-residential facilities." *Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 WL 4601372, at *6 (E.D. Mich. Oct. 15, 2008), *aff'd sub nom. Sutton v. Piper*, 344 F. App'x 101 (6th Cir. 2009).

The Brixworth neighborhood pool is a private, residential facility, which the ADA obviously does not cover. Murphy is not entitled to swim in it to "cool himself down." (Doc. 1-2, at 12.) The claim is dismissed.

### 2. FHA

Plaintiffs also have not stated a claim for relief under the FHA, which they believe protects them from discrimination based on political expression. (Doc. 1-2, at 12.) "The Fair Housing Act, broadly speaking, prohibits discrimination in the sale or rental of housing and in the provision of housing services or facilities 'because of race, color, religion, sex, familial status, or national origin.'" *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 537 (6th Cir. 2014) (citing 42 U.S.C. § 3604(a)–(b)). The FHA does not protect Plaintiffs from discrimination due to their political views. The Court will dismiss the FHA claim.

### c. Breach of Contract

Plaintiffs also appear to assert a breach-of-contract claim, arguing that the BHOA breached the CCRs by ordering them to take down the yard art and revoking access to neighborhood facilities for failing to do so. To succeed on a breach-of-contract claim under Tennessee law, a plaintiff must establish: "(1) the existence of an enforceable contract, (2)

nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019) (citations omitted). Tennessee Courts have held that HOA covenants are enforceable contracts, to which the same rules apply. *See, e.g.*, *Swingholm v. Farm at Clovercroft Homeowners Ass'n, Inc.*, No. M202201633COAR3CV, 2023 WL 6817376, at *3 (Tenn. Ct. App. Oct. 17, 2023) ("Rules governing the interpretation of restrictive covenants are generally the same as those applicable to contracts."). They have also noted that, when covenants provide the HOA with discretion in its enforcement powers, "courts will not disturb [discretionary decisions] unless it is shown that the [HOA] acted unreasonably or in bad faith." *Id.* (citation omitted).

Plaintiffs' breach-of-contract claim fails. Based on Plaintiffs' own allegations, the procession of events in this case is simple: Murphy put up political signs in his yard that clearly violated Article XVIII of the CCRs, which bans display of nonprofessional signs and signs exceeding one square foot. So, the BHOA acted to enforce the covenant by repeatedly requesting that he remove them. (Doc. 1-2, at 34, 44–45.) When Murphy refused, the BHOA used its discretion to temporarily revoke Murphy's access to the neighborhood pool and clubhouse pursuant to authority granted in Article IV, Section III of the CCRs. (*Id.* at 40.) In other words, Murphy breached the CCRs, and the BHOA responded by giving him multiple opportunities to remedy the violation before ultimately resorting to suspending his access to community facilities. At no point did the BHOA breach the CCRs. The Court will dismiss this claim.

V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the BHOA's motion for judgment on the pleadings (Doc. 19). It **DENIES** Plaintiffs' motion to remand (Doc. 31) and Plaintiffs'

14
Case 3:24-cv-00078-TRM-JEM   Document 40   Filed 08/08/24   Page 14 of 15   PageID #: 373

motion to recuse (Doc. 34). All claims are hereby **DISMISSED**. The Court will **DISMISS** the case.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**